and we'll turn to counsel in Naumovski v. Norris. Ms. Fowler. Thank you, Judge. Good afternoon. May it please the Court, I'm here on behalf of the appellants James Norris and Nicole Shaw. The Court has jurisdiction to hear this appeal under the Collateral Order Doctrine. The appellant's qualified immunity defense is a legal issue that can be decided as a matter of law while accepting all of the plaintiff's allegations. The Court below did not address qualified immunity. The denial of summary judgment noted disputed facts, but it did not address qualified immunity if the plaintiff's allegations were accepted as true. Analysis of the facts as the plaintiff alleges based upon the state of the law at the time of the alleged conduct indicates that qualified immunity applies. The court allowed the sex-based discrimination and the hostile work environment claims to go forward against these two individual defendants, specifically grouping sexual orientation into the analysis and citing this Court's 2018 decision in the Zarda case. Well, before Zarda, though, and I know Zarda is the basis for your saying that the law was not clearly established with respect to sexual preference, our court had kind of recognized what I'll call a sexual expectation basis for discrimination. If you expect a man or a woman to behave in a certain way and someone who doesn't is discriminated on that basis, that was recognized as a claim. And as I understand it, your adversary says that they were also pursuing that theory. It wasn't discussed as that way in the court below, Your Honor. And when you look at the circumstances of this case, those aren't the same circumstances here. In this case, it involved rumors about an alleged relationship between the plaintiff and one of the student players. And the allegations are that the university and my clients, the individual defendants, didn't do enough to stop these rumors coming from the parents of students that are beyond their control. That's not the same as an expectation that the plaintiff behave in a certain manner because she's a woman. There was no discussion of that in the decision below. Qualified immunity should only be defeated if the officials violated constitutional rights and acted with malicious intent to deprive constitutional rights. Here, the right to be free of sexual orientation discrimination, which is essentially, when you look at the facts, what's been alleged, was not clearly established eight years ago in 2010. There's three factors that are supposed to be present, and they're not present here. The right wasn't defined with specificity, it wasn't supported by Supreme Court law or law from this court, and there wasn't existing law about the official actions at issue at the time they occurred. Perceived orientation, as we talked about, was only recognized last year as a protected category. The appellants could not have maliciously intended to discriminate against the plaintiff based upon a perception that she was gay back in 2010 when it wasn't a recognized right. All of these allegations center around these false rumors that she was gay and was having a relationship with the student. The one statement that is alleged to be separate from that, and that it refers only to her gender, and that's the statement that she was a single woman in her 30s, and that, therefore, that's why these rumors were occurring. The plaintiff says that my client Mr. Norris said that, he said that she said it. Either way, if you accept the plaintiff's version that Mr. Norris said this, it was still in the context of a purported explanation of why these rumors that she was gay were occurring. And if you take it out of that context, it is just a stray comment. But isn't that statement, which we're invited to regard as true for purposes of this argument, isn't that statement sufficient to infer discriminatory intent by your client? I would say not, Your Honor. Because it's stray, and because the court below indicated that it's pulled out of that isolated category because of all these other indicia. All of these other indicia involve the rumors that she was gay. That had nothing to do with her gender itself, and her age, and her single status. Also the, sorry, Your Honor. No, go ahead. Also the conduct that's alleged, it's basically alleged that there was an omission here, in addition to not renewing her contract. An omission, the failure to stop these rumors, the failure to stop the parents from complaining that one player was getting more playing time because of an alleged relationship. This is in no way similar to the obvious and intentional deprivations like beatings in police custody. With regard to the motion for reconsideration, if I may. The appellants were not seeking a mere second try at the bat here. The qualified immunity defense needed clarification, and it was not addressed. You asked Judge Heard to do that. That was- To address the qualified immunity issue. Correct, Your Honor. Because the language in Judge Heard's decision relied on the Zarda case. The Zarda case came out in the five years when the record was pending, and it was inconsistent with the analysis of the rights at the time, in 2010, when the plaintiff, her contract was not renewed. That was- Refresh my recollection. What did Judge Heard do in response to your request that he address the question of qualified immunity? Your Honor, he said that there have been no new facts or law raised. He didn't address qualified immunity. If we were to agree with you that to the extent that the claim is discrimination based on sexual orientation, that that was not clearly established. What's your theory for not allowing the claim to go forward as a pre-Zarda sex discrimination case? Your Honor, again, I think it's because the circumstances of all the allegations have to do with this alleged sexual relationship between the plaintiff, who's a female, and one of her players. There isn't anything else to tie this in to just her gender alone. In fact, one of my clients, Michelle, is gay and is a coach of the students. And the plaintiff herself testified that all three of the other female coaches had been accused of similar behavior at some point. I'm going to ask your adversary how in this situation of an adult coach and juvenile students, this isn't something that would be discussed without regard to sex. Male, female, heterosexual, homosexual, a coach having sex with a student would be a concern. But I didn't understand that to be your argument, or am I missing something? Our argument is that the allegations here all really involve perceived orientation. That's been the claims, that there were these rumors, and that you didn't do enough to stop them. And under these circumstances- I thought the rumors were that this coach was having a relationship with this student. They were of the same sex, so the relationship would be homosexual. But I'm not, are you suggesting that the claim would not be the same if this were a male coach having sex with a female student? I'm not sure, Your Honor. The way it had been alleged was they all think I'm gay, I'm not gay. This perception is wrong under these circumstances. I couldn't speak hypothetically to the other situation. Thanks very much, Ms. Fowler. You've reserved two minutes. Thank you, Judge. Ms. Bozeman. May it please the court. Good afternoon, Your Honors. The pleading in this case clearly sets forth gender discrimination and it's under the First Amendment retaliation claim in the 14th Amendment. Are you telling us you are not pursuing a sexual orientation claim, the kind of claim we recognized in Zarda? Correct, it was never pledged. It's what I'll call pre-Zarda sex discriminations type claim. Help me out with what I just raised with your adversary. The rumors are a coach is in a sexual relationship with a student. I would think that would be a matter of concern, whatever the sex or sexual orientation of the coach would be. So, how your client, these may have been unwarranted rumors, I understand that. But how is it a sex discrimination claim if the concern would arise regardless of sex? The complainant, the plaintiff in this case, alleges that she was discriminated on the basis of gender and that's anchored in the direct- It doesn't even if it were a male coach rumored to have relationship with a female student that he would have been treated any better, are you? I'm suggesting that discriminatory motives are best disentangled by a fact finder. And that is what the judge declared here. And to point out that the defendants here have stated that Judge Heard did not address the qualified immunity. If you look at his decision, a special appendix at page 39, he says plaintiff has offered evidence suggesting this was merely a pretext for her termination. And proffered evidence that when viewed as a whole is sufficient to permit a rational finder effect. That defendants decision to terminate her was more likely than not motivated in part by sex based discrimination. So that's- You told us it's not a czar to claim. Don't you have to come forward with plausible claim that this would not have happened if it had been a male coach? Which she did. She pointed out that she was told to stop touching the players. She couldn't pat them on the butt. Male coaches were not told that. You've got the direct evidence of Norah saying, you're an unmarried female in her 30s, what years ago they used to call a spinster. That sex stereotyping suggests that there's something wrong with her sexually, that there's something wrong with her as a woman because she's not married and she's mid 30s. A male coach would not be put under that similar scrutiny. They would not have this observation or this scrutiny as her coaching continued. And I think that the question about whether or not her gender would be, if she was treated differently as her gender, would be a fact based question, which Judge Heard defined clearly in the decision. And if you look at the dissent in the Zorda case, which Your Honor concurred with, except for part four of Judge Lynch's decision. And I think at that point, at page 139 of the decision, citing Doe versus City of Belleville, Seventh Circuit, 1997 case. He said, whether gender stereotyping notions about how men and women should appear and behave can sometimes be resolved by considering whether the plaintiff's gender would have been a question if she were a man rather than a woman. So the direct question that was, or the direct statement rather, that was made to her by the athletic director is your problem is you're a single female in your 30s. That provides the anchor. The temporal proximity of her termination based upon an allegation that she is a sea muncher also provided evidence that a reasonable fact finder could conclude that she was treated that way. Based, in part, motivated by her gender. You're saying this is the evidence that at least gets you to a trial. Correct. And so to say that Judge Heard didn't use the magic words qualified immunity, that may be so. But his decision clearly sets forth in those two paragraphs on page 39 of his decision. That Nemovsky proffered evidence when viewed as a whole is sufficient to permit a rational finder of fact. To infer the defendant's decision to terminate her was more likely than not. Motivated in part by sex based discrimination. Therefore, there is not a qualified immunity and the defendants have tried through their motion for a perceived sexual orientation lens, however, it wasn't pled that way. It wasn't, the evidence wasn't proffered that way. And when defendants made their motion, they're the ones that argued throughout their motion that this was discrimination based upon perceived sexual orientation. Clearly, the change in the law under the title seven now applies and that claim may go forward with respect to that as found by Judge Heard. The- Are you saying that a Zarda claim can go forward now? He made a finding that the claims under title seven that were, I think it was page. No, no, do you think you're going to be able to pursue a sexual orientation claim at trial? Perceived sexual orientation was dismissed as to the individual employees, but I think that his decision at page. No, no, but this is the decision that's appealed from and to the extent you're trying to base a claim that we didn't recognize until Zarda, there I think there may be some qualified immunity concern, but you've just told us at the very start of your argument, I thought that you weren't pursuing a Zarda claim. Not against the state defendants, not under section 1983, the Zarda issue is a title seven matter. It's statutory, not constitutional. The constitutional claims that remain for trial under section 1983 are sex-based discrimination and hostile work environment. Those two claims are all that were appealed here on the qualified immunity issue under those section 1983 claims alone. How do you think you can bring claims that we didn't recognize until Zarda under constitutional theory? No, the claims under the title seven cause of action were pled as perceived sexual orientation discrimination and as part of- I don't mean to confuse this. I just thought that in light of your concession that you weren't suing for perceived perceptions of what a woman should be like, etc., that we really didn't have a qualified immunity claim based on when Zarda was decided. But some of what you've said a moment ago makes me question whether you think that affirmance would allow you to raise a sexual orientation claim below. Qualified immunity is available only to the defendants under the section 1983 claim, your honor. So that's what we were addressing that was brought up by the defendants and their motion for reconsideration, which was deemed untimely. So that section 1983 is where that qualified immunity comes in. Qualified immunity doesn't come in under title seven. It's a statutory construction claim for discrimination on the basis of gender, hostile work environment, and the stereotyping argument that as pled in the complaint. If you take a look at the appendix at page 20, the seventh claim under the 14th amendment for equal protection violations, and the eighth claim under the 14th amendment for the hostile work environment. Those are where the defendants, Scholl and Norris, continue to be held into the case. All the other claims against them were dismissed under title seven. So I'm sorry if I confused that for your honor. But I'd also like to point out though that the claims that the defendants are saying is that this can only be perceived sexual orientation. And that argument that they have made and pursued here is really a fact based inquiry that cannot be resolved on a motion for summary judgment. And once there is a question of fact perceived by the court and found to be material genuine issue of fact for trial, then the question of the qualified immunity based upon the law falls out. And the defendants are here on that pretense. Unless your honors have any other questions? Thanks very much. Thank you. Ms. Fowler. Thank you, Judge. Just briefly on three points. There was a mention of an anti-gay slur that did not, and there's been no allegation that that came from my clients. It was a letter from an anonymous person sent to a parent. Then there was also a mention of directions to the coaches that were not given to the male coaches. I would just like to point out that one of my clients, Ms. Scholl, had nothing to do with the male program. The male basketball program. This is Judge Winter in Balmey, New Haven. Do you agree with your friend's description of what claims will be tried on remand? I think I do, Your Honor. There's only two claims left against my clients. There was a discussion about Title VII, but that's not applicable to the individual defendants. Right. So I think I agree that the two claims that were remaining from the district court are the sex discrimination claim and the hostile work environment claim. And those are the two that we're asking that the denial of summary judgment be reversed. So let me put that question in a slightly different version. What is the remedy you seek from us? Well, let me put it another way. If we reverse the district court's order with respect to the 1983 claims against your clients, what would happen? That presumably would mean the entry of summary judgment for you. Correct, Your Honor. I think the court has two options. The entry of summary judgment on those two remaining claims, which we think is appropriate, or potentially remanding it to have these issues disentangled from the sex discrimination claim and the sexual orientation claim. Because they were aggregated together in the district court's opinion. But we wouldn't actually enter, or the district court wouldn't enter summary judgment. It would simply permit it to go to trial. Understood, Your Honor. Okay. You heard your adversary point to some evidence in the record that she says would be sufficient to raise a question of fact about whether her client was treated differently than a man would have been treated in circumstances where the man was the subject of rumors. Do you want to tell us why we shouldn't be persuaded by that argument? Sure, for two reasons. It wasn't factually explored in the record below. There's no indication about what the male student players did. Second of all, my client, Ms. Schull, has no involvement with the male basketball team. And my client, Mr. Norris, only took over the position halfway through the plaintiff's tenure at the university. And so that's why we think it shouldn't be considered. All the coaches for women's basketball are women? They were at this time, Your Honor. I'm not sure about currently. No, no, at the time. Yes. Thank you, judges. Thank you. We reserve decision. Thank you both for very fine arguments.